Good morning, Your Honors. May it please the Court, my name is Adam Gutreid and I represent the Plaintiff and Appellant, Susan Yoon. Your Honors, the question of whether the advertisement is misleading to reasonable consumers is a disputed question of fact in this case. And the question needs to be resolved under this Court's precedent in Williams v. Gerber, which the District Court did not address, did not cite anywhere in its order, although that order was prepared, as Your Honors know, by defense counsel and signed without any modification. Williams v. Gerber holds that the District Court is, except in rare cases, not to dismiss false advertising claims, such as this one on the pleadings, based on the District Court's own reading of the advertisement, but rather is required to consider whether there are issues of fact. And what Judge Reel did in this case was sua sponte transfer the motion to dismiss into a motion for summary judgment, but then exclude all of the evidence that plaintiffs presented as to why the advertisement would be misleading to reasonable consumers. Which it could do if, if the text of the promotion was not confusing or misleading. It can do that if, as this Court held in Williams, that it would be, quote, impossible for plaintiffs to prove that a reasonable consumer would be likely to deceive. Right. May I ask you a question on that? And that is just in general. If the text of a promotion is clear and neither confusing nor misleading when read, does it become unclear, that is, possibly confusing or misleading, if a glance at it is not clear? Well, I would say yes, Your Honor, but I don't know that that's exactly the facts of this case. I didn't – I didn't – I'm just asking you a hypothetical. I would say, Your Honor, that that question was actually answered in Williams. The facts there were – Well, it was plainly untrue. No. Well, I mean, it wasn't great. I mean, there weren't cherries and apples or oranges or whatever in the box. It was grapefruit or it was grape juice. That's right. Okay. So it's just – it was just untrue. So my hypothetical isn't just a glance. And my hypothetical involves a glance. I understand, Your Honor, but I respectfully believe that that's not what Williams v. Gerber held. What Williams v. Gerber is about a product called fruit juice snacks. The product, in fact, contains fruit juice. And the product says, and other all-natural ingredients. The product, in fact, does contain other all-natural ingredients. The only thing that was alleged to be misleading about the product is that it has a picture on it of a certain type of fruit, and that type of fruit is not actually contained in the product. But nowhere on the packaging does it say this product contains this fruit. There's just a picture of that. And if you read the ingredients, it doesn't say – if you bothered to read the ingredients, it didn't say that – I mean, the ingredients were listed accurately. That's right. The ingredients don't say that it contains anything other than what it does contain, which is grape juice. And all the other ingredients, some of which were natural and some of which weren't. But what the court said quite clearly was that consumers should not be expected to look beyond the misleading representations on the front of the box to determine what the truth is by looking at the side of the box. And the same is at issue here, that this advertisement, because of how it's displayed, is misleading. Even if, as reasonable attorneys, we can sit down and parse it very clearly and carefully, we can determine that perhaps if you parsed it in the way that the defendants argue it's true, it's misleading because it repeats the same phrase. It does not ever use the word additional. An additional. What law applies here? Is this California law? Yes, Your Honor. Okay. Well, in Williams, what we said was that the California Supreme Court has recognized that these laws prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood, or tendency to deceive or confuse the public. So I gather you're arguing the capacity, likelihood, or tendency of this advertising. So explain that part of your argument. Why do you contend that this statement, which is true, has this capacity? There are both things about the statement which are things about what it says that are misleading and things about what it doesn't say that are misleading. What it says is it uses the word shopping card, and in fact it's a coupon. It's not a card. It's not a gift card that you might give someone or any other type of card that you perhaps have experience with. It's a coupon that can be used for $20 off of a purchase. What it doesn't say, it doesn't say additional purchase or second purchase. It doesn't say that it's good towards a purchase. It says good when, not good towards. And it uses a repetition of an identical phrase, which the expert opined would be interpreted by consumers to refer to the same purchase requirement twice, not to two different purchase requirements. The Court just excluded that evidence entirely. We ran a small-scale survey. The survey also showed that all of the consumers failed to understand the advertisement in the way that the defendants believe it should be interpreted. That is, they all thought that when you took advantage of this offer, you would get something by paying $60 that was worth $20, and not that you would have to then spend another $60 to use this thing that you got worth $20. This Court, however, the District Court here, refused to consider any of that evidence. In fact, it granted every one, every single one of the 53 objections to the evidence that the defendants prepared and did that in a single line of the order, which they also prepared. It refused to hear the motions to compel discovery, one of which was already on file and another of which was pending, which would have sought deposition testimony from the defendant as to why its own employees apparently missed the second purchase requirement. If we disagree with you as to your first argument, are these really issues that would matter? I don't understand. If we agree with the District Court, are these other issues as to evidence really essential to the resolution of this case? I mean, if I disagree, if I say the District Court made the right decision as to how it interpreted the law under Williams, are the other issues as to evidence really that important to the determination? Your Honor, I guess I would say perhaps not, but I would argue that it would be improper to apply Williams without first considering the evidence. I see. Let me ask you a question. Let me move. I'm just asking. Okay. Just one second. For because? Because Williams says that the Court is not supposed to be the one reviewing this ad by itself. It should be considering the evidence. That's why we can't dismiss unless it's dismissed. No, unless it's impossible. You just read it. That's right. And that's crucial. That's the linchpin here. I mean, if the District Court's interpretation was correct, that it's impossible for a reasonable consumer, then Judge Smith's question fits in. I agree. I agree, Your Honor. I just want to agree. And, of course, our position is it's not impossible. Well, I understand your position, but I'm glad Judge Reimer nailed you on that, but I was saying to myself it couldn't be. Let me talk to you about a different situation. Let me talk to you about maybe the standing under the California cases. Yes, Your Honor. Given the clear holding in Buckland, which stated that because remedies for individuals under the UCLA, UCL, sorry, I'm going right to UCLA, sorry. UCLA, UCL are restricted in injunctive relief and restitution. The import of the requirement is to limit standing to individuals who suffer losses of money or property that are eligible for restitution. How can you then argue that your client has standing under the UCL or FAL claims? Because, Your Honor, she's entitled to restitution of the money that she paid Gap for this merchandise. What restitution is there? She got full credit, full everything she wanted. She didn't ever ask for it back. She didn't do anything. That would always be the case, Your Honor, in every false advertising case, that the defendants would be able to say, well, we gave him something. It may not be what we said we were going to give him, but we think it's worth, you know, we paid $100. I don't know what he got. It's not what we promised, but it's still worth $100. I mean, that's a factual issue that can't possibly be decided on a motion to dismiss. The issue of whether she's entitled to restitution is she paid money to the defendants. She lost money or property. She would not have paid that money. You asked for restitution? Absolutely, in the complaint. And you also asked for injunctive relief, right? We did, Your Honor. And I would just refer, Your Honor, also in response to Judge Smith's question, there is a district court case that is instructive on this, which is a case by Judge Chesney in the Northern District. It examines that very issue, Fulford v. Logitech. This is not cited in the briefs. It's 2009, U.S. District, Lexis, 42296. And it examines the Buckman case and what the meaning of that case is. Your Honors, I would also like to spend a minute or two about the request for reassignment on remand. And I would request that this case be reassigned. This is a case in which the judge not only refused to consider, mention the case, the primary case on point, to hear our motions to compel discovery, sustained all of the evidentiary objections, sustained every single request that they made in their proposed order. This is the judge that has now found that our plaintiff is implicitly unreasonable and this is the judge who is going to have to rule on the merits of the claim because the claim is going to be tried to the court. And I would cite, Your Honors, a case by Judge Wardlaw. One second. There's many cases on this point with this particular judge, so you don't need to point out that I happened to write one of them. Oh, no. It wasn't about this judge. I'm sorry. It was about the standard. The standard. Okay. Well, why is this going to be decided by the judge? The UCL claim is a claim that does not have a right to trial by jury. Okay. Well, what about the other claims? The other claims do, Your Honor. So it's only the UCL? Correct. Okay. So you can cite. The case I was going to cite was In Re Ellis, 356 F. 3rd, 1198, which examines the standard. And this is, I think for the, I won't go into what the case explains, but the facts here definitely meet that standard. Unless the Court. Oh, wait. What is the standard? Oh, I'm sorry. The standard is that there are three tests. Whether the original judge would reasonably expect it upon remand to have substantial difficulty in putting out of his or her mind previously expressed views, or, in the second part, whether reassignment is advisable to preserve the appearance of justice. The Court held that it has to be only one of those two. And then in addition, whether reassignment would entail waste and duplication out of proportion to any gain. The only motion that's been heard is this motion. There would be no waste by reassigning this case. And certainly reassignment is advisable to preserve the appearance of justice. And based on this particular judge's history, we can reasonably expect that he might have difficulty putting his previously expressed views out of his mind. History in this case? No, Your Honor. But we don't even have to prove that. That's the point. It's either or. I mean, the problem comes in that those are pretty broad standards. And this judge, as you've appropriately suggested, has only ruled on one motion. And I appreciate that it's the new rule or the new technocrat that the district judge never would adopt an order for conclusions of law and factual determinations that an attorney would present to him. He ought to make his own. And if he does that, he's certainly out of it. But you don't have white hair like I do. And frankly, I never appeared in front of a judge when I was practicing law, which didn't do the same. So I guess I'm trying to figure out why it is that on this record, this judge could not hear this case. Because of the UCLA claim, the argument which you've made, what else is there? That's the main point, Your Honor. But I think also that this the fact that the judge, in light of Williams, excluded every piece of evidence, every piece of evidence. Frankly, we didn't ask you many questions about exclusion of evidence. But the exclusion of evidence, when we're proffering it for summary judgment, is similar to others. And it's all an abuse of discretion, especially for experts. It is, Your Honor. And the Bolthius case says that we should have been, if there was a Daubert problem, we should have been given an opportunity to correct it. I have five seconds, so I'll sit down. It's all right. Thank you. You can finish answering his questions. Go on. Sorry. It's all set, sir. Thank you. All we need now in this case is a USC client. That's exactly. Since I've said it several times. May it please the Court. My name is Chris Caldwell, and I represent Gap, Inc. on this appeal. The central issue in this case is whether a district court is allowed to determine as a matter of law that a shopper at a Gap store in May of 2006 who saw this in-store sign and then received this card that I've displayed for the court with the information that I have is adequately informed that the terms of the promotion required the shopper to spend $60 to get a shopping card that would allow $20 off an additional purchase of $60 in the following month of June 2006. As this Court said in Williams and in other cases, and as the California Courts of Appeals have said repeatedly, the primary evidence in a false advertising case is the ad itself. So out of the hundreds of pages in the record in this case, the ad actually is buried. It isn't found until the fourth volume. So as the Court can see, we brought blowups of the ad today since it is the primary evidence in this case. The signage, the in-store signage says get a $20 shopping card, not a gift card, not a gift certificate, something that's a term that doesn't have a usual meaning. To me, it means a gift card. To me, it means a gift card. I mean, I get them all the time in the mail, shopping cards from Saks, from Neiman's, from wherever, because I've spent a certain amount. And then they send me these shopping cards, which are essentially gift cards. If I come there, you know, I can use it. I'm rich and nice. So... Your Honor, I think if the term there that was used was gift card, that would be the term that has a common meaning. Your Honor, I certainly don't think there's any evidence in the record to suggest that, and I actually would respectfully disagree with that. But, you know... Of course you would. Of course you would. But I'm just saying that, I mean, we've obviously, this thing, this advertisement, let's just take the first one, was reprinted in all the briefs and in the bench memo. It was reprinted many, many times, so we're very familiar with it. This is what I find confusing about it. And then you tell me why that it's impossible to read it this way, okay? It says, get a $20 shopping card when you spend $60 or more. And then it says, $20 shopping card. Good, when you spend $60 or more. To me, it's the same $60. It's not, again, spend $60. And then, I'm just telling you my reading, and then you tell me why it's impossible to read it that way, okay? Is that okay? Okay, then it says June 1, June 30. That tells me I can use that shopping card between June 1 and June 30. That's how I read that when I first read it, before I read the briefs and all the arguments and everything. Why is that impossible? And the reason that it's impossible to read it that way, and let me start with, what we know from the record, of course, you have the top part of the text, then you have separate text that's grouped together here. And what the separate text says is $20 shopping card, good when you spend $60 or more, June 1 to June 30. The meaning that there's no second $60 requirement. The only way you can get there is to eliminate this line. Eliminate that line, ignore that line. But it's redundant. The first time it said it, to me it means the same, it's the same $60. You know, I'm going to just submit that I do a lot of shopping. And so. I'd probably do an affirmative to that. In fact, I might even go out this afternoon, you know, and reward myself for this miserable week I've had this week. But that's what I'm reading it as. I just don't know why that's an impossible reading. It requires an entire line of text to be ignored. And we know that this text was looked at because Ms. Yoon said in her declaration before the district court that she knew from the end of her assignment she had to come back in June. She just ignored the second line of text. And, Your Honor. I guess my worry is, and I appreciate you trying to establish this, but it seems to me that if I read the Freeman case and I try to apply it in our situation, I would have to suggest that everything on this particular ad is not only true but not misleading. And in that case, I would be able to affirm what the district court did. Would you agree with me on that? I would agree with you, Your Honor. The only thing, the only... Do you agree with me or won't you? You also have to look at the card itself. I understand that. But would you agree that it cannot be misleading or deceptive? If it's misleading or deceptive in any way, Freeman is not applicable here. That's correct, Your Honor. We don't disagree with that. Okay, then. If that's so, if there could be a misleading or deceptive way to read the card, then Freeman will not apply. Would you agree with that? I would not. Freeman says that the promotion has to be right. I didn't ask you to tell me what Freeman said. Do you agree with me that if there is a misleading or deceptive way to read the card, then Freeman does not apply? I would not agree with that, where the question only looks at the sign and not the card. Well, I'm going to put them both in. If you put them both in and if you read the totality and there is no way... And you're suggesting then to me that on summary judgment, I cannot read that card and the gap card and not see anything in there that is misleading or deceptive. And that, yes, Your Honor. That's what you're suggesting. So if I find even a question that is misleading or deceptive, then it has to go back for trial. Misleading or deceptive to a reasonable consumer. It's not... Well, I understand to a reasonable consumer. But I'm saying misleading or deceptive. And I think it's a reasonable consumer who reads the text of the promotion. And it's not a test of someone who glances and misunderstands. And we know that, Your Honor, from the Paduano case, the 2009 decision of the California Court of Appeal interpreting the same statute. So if that's so, what part of this advertisement suggests that a person must pay out $120 to get a $20 redeemable? Your Honor, it's right here. We think it's both inside where it says $20 shopping cart good when you spend $60 or more June 1 through June 30 because you're only seeing this in May. And on the cart itself, Ms. Yoon herself admitted that as soon as she bothered to read the cart, she said it was either later that day or when she went home, in the next couple of days, she understood $20 off a purchase of $60 or more. But she had already paid her $60. That's the gist of her complaint. She had purchased $60 and then she had a cart. Because she was making a – the gist of her complaint, and this is summary judgment and that's part of the problem. But she went up. She only had $52. And according to – we view the facts in the light most favorable to the non-moving party. So according to her, she went up, she had only $52 or something worth of merchandise and was told, oh, if you spend $80 more, you get this $20 cart. So she spent the $80 more to get the $20 cart. I mean, at that point, she's not – I don't see where anything tells her that now you have to go – when you come back in June, you have to spend another $60. Even she admits, if we start with the clearest evidence, that as soon as she read the card, she understood it. And it's – and it was no mistake that none of her ex-colleagues – But she didn't get the cart until after she spent the $60. Well, she was still standing in the store while she had a receipt in her hand that said she could return everything if she wanted to. Okay. Let me ask you another question. I'm going to – I am going to assume GAP acts in good faith and there was no intentional misleading information on this. What's the standard that – is it strict liability here under the law? I mean, if they prove that the reasonable consumer – that it had a capacity to mislead a reasonable consumer, does – that GAP's men's right come into play at all? I think, as they frame their claims, that if there is a violation of any of these statutes, then under the false advertising statute and the UCLA – UCL statute – I've made that mistake many times myself, Your Honor – that she's entitled to restitution, which we don't think she has standing in response to Judge Smith's question. Yes. She paid $64.91. She got $64.91 worth of clothing. It's the same clothing that she selected that other customers who came to that GAP store paid $64.91 for on those same days. Restitution is an equitable remedy to return property for her that she's equitably entitled to. As long as you're on the standing question, are you familiar with the Fulford v. Logitech case? I am not, Your Honor. Out of the California Northern District. I heard it cited, but I was not familiar with it before today. It's a recent case. It's a very recent case. Well, it has a different view on the restitution argument, suggesting that if we adopt their panel or their logic and their reasoning, that that does not deprive of standing. So that's why I wanted to ask you. And I apologize, Your Honor, that I'm not familiar with it. We cited and we believe that under the Hall case, which is another recent case on this issue, it's a situation with a magazine or a book promoter where the person paid $29.51 for the book, and as the Court said, he got a book worth $29.51, so he doesn't have – there is no restitutionary damage or no injury that is eligible for a restitutionary remedy. Mr. Colwell, going back to the summary judgment, a phrase slipped off of Judge Wadlow's item and kind of got lost in the shuffle because I think she was assuming that if it's possible to read the card some way other than the way Gap reads it, that there would be a trial. So my question is, if we were to say on this record that the district court's summary judgment can't stand, what does happen? I'm quite concerned about the state of the record and whether it should be reassigned or not. It's always a tricky question. But here the district court, without explanation really, rejected out of hand any consideration of any of the evidence that the plaintiffs offered, or Gap's reasons for why that evidence was not valuable. And so we really don't have a reasoned explanation. And if the card is – it's possible to read the card some other way, then those issues all percolate up. There's no finding a fact on standing, for example, or legal conclusion on it. And I don't think it's our job to paw around in the record and try to figure out whether somebody's got or doesn't have standing. So bottom line question is, what should we do? Should we just remand and say start over, or should we remand to a different judge and say really start over? There are a number of different questions there. Let me try and answer as many as I can. On the standing issue, of course, the district court did not have to reach the standing issue. If it agreed, we believe. Is the standing issue even in front of us? That aspect of this troubled me, too, because I read the judge's verbal ruling and then I read your recitation of this verbal ruling. It has nothing to do with standing. I don't understand how that standing issue is now in front of us. It's only in front of you as an alternative grounds to affirm. And that's why it was raised before the district court. The district court did not rule on it because the district court did not need to reach it. But we believe it's an alternative grounds to affirm. Because the court probably doesn't shop as much as other people. I would like you to answer Judge Reimer's question, because I think that's a very important one. I agree. Your Honor, I think there is to be a reversal and remand. On this record, what it shows is the district court twice granted continuances, once at the hearing. The time between the original hearing and the actual hearing was nearly three months. The district court judge gave plaintiffs a full opportunity to argue the motion as a result of the hearing. At the summary judgment hearing, they did not take advantage of that opportunity in any way. He said, do you have anything you want to say? They said nothing. But he didn't consider any of their evidence. He just ruled none of it was admissible based on his reading of the advertising. And we think that's correct, Your Honor. You don't get – if the ad is clear on its face, and that was the grounds of our motion, there's no doubt it started as a 12B6 motion, then you don't get to create disputed issues of fact from expert declarations. We think – I'm trying to get an answer to if that's – We think it should be remanded. We don't see any reason why it wouldn't be remanded to the same district judge, Your Honor. And under plaintiff's standard, any time there's any issue that's going to be tried by the court rather than to a jury, there would be a need for reassignment. And that is not the practice of this Court. There's nothing in the record of this case suggesting that this Court in any way was – engaged in abusive practices. Rather, the district court read the Freeman case and enunciated his decision relying on Freeman. We think he was – we continue to believe he was right, Your Honor. And if this Court were to find he was wrong, it's because there's a tension between Freeman and Williams, although we think Williams is easily distinguishable. But it's not – that there's not a reason or need to reassign it to a different judge. If I might, Your Honor, I'm going to talk about the breach of contract claim. Putting aside the waiver argument, which I don't think is very successful, but putting aside the waiver argument, does a finding that summer promotion was neither misleading or deceptive necessarily preclude a breach of contract claim? We believe it does, Your Honor. How? Because – Breach of contract has nothing to do with misleading or deceptive. Well, if it's not misleading or deceptive, then the terms of the contract are spelled out in this document. Well, but the – and the terms of the contract are then the reason for having a breach of contract action in the district court, because one party reading the contract thought one thing and one party reading the contract thought another. And so how is the breach of contract claim eliminated? Because at that point, you don't look at the subjective views of the parties. You think that is unambiguous? I think – I'm sure their argument is that it's ambiguous. In fact, that's what they argue. I'm sure that's their argument. And so a district judge didn't rule about that, whether it was ambiguous or not. All he said was that it wasn't misleading or deceptive. Now, that's my question. If the district judge, having not ever talked about whether it was ambiguous or not, only as to misleading or deceptive, how could he dismiss the breach of contract claim? By saying that the terms of the agreement were disclosed, and as a matter of law, that's the function of a court in interpreting the terms of a contract. Subjective, unexpressed intent is not something that's considered. It is a function of law for the court to determine a written contract. Under California law, if this is ambiguous, or if one suggests it's ambiguous, and even under California law, you can have people come in and tell you about what they thought, whether it's ambiguous or not, which is different than old Idaho, how does one get rid of the breach of contract claim? One gets rid of the breach of contract claim because the contract was $20 off a And there's no alleged breach of that contract. In fact, their theory is, as I understand it now, is that it was truthful but misleading. If it was truthful, if the terms of the contract were truthfully disclosed, then there is no breach of contract, Your Honor. And the court was entitled to determine that as a matter of law. I would also note that in the briefing, both the briefing below and the briefing before this court, the plaintiff and the gap, very little attention was paid. It was not the center of focus of anyone's pleading. But I think that everyone agreed that the result followed. Are there still claims? So he rolled on one claim. Are there still claims pending? No. There was summary judgment in the entire action. Based on his rolling on the UCL claim. Well, but our motion to dismiss, which was what started it, the 12B6 motion said that summary judgment, or it said that dismissal was appropriate on all claims based on the disclosed terms. So the matter, the issue was teed up. The matter was before the district court. As I understand it, based on the fact that it wasn't misleading or deceptive. That's the ultimate. Those things got rid of every claim alleged. We think it's just like Freeman, Your Honor, where there's a condition to the receipt of the benefit. The condition may have been disclosed in different ways, but you have to look at the entire promotion. It's just like the Plotkin case with the valet parking ticket. You have to look at both of them. When you look at both of them here, Your Honor, we think that it was clear and unambiguous and was properly disclosed. Okay. Thank you, Mr. Caldwell. Mr. Attorney will give you as much time as you require for rebuttal, given that we've run over. Oh, thank you, Your Honor. I was going to say that since I only have five seconds, I was just going to thank you for your time. Perhaps I should ask if there are any questions first. Okay. I would first say I, of course, agree with Your Honor about the breach of contract claim, that it was improper to dismiss it for the reasons Your Honor identified. I also want to make clear that the plaintiffs have never conceded that this is a truthful advertisement. What we've said is that even if truthful, it is misleading. It has a capacity to mislead. But we don't think it's truthful for the reason that Judge Ward will identify, which is that shopping cart has an understanding, is understood by people to mean something different from coupon. And they gave a coupon. Although it's in the form of this, it's actually a coupon. We also put in expert evidence the declaration of team for your own on that point, as to what shopping cart is understood to be.    It has a capacity to mislead. And there is not going to be any waste of judicial resources by doing so. And it will preserve the appearance of justice. Thank you very much. Okay. Thank you, counsel, both of you. The matter just argued will be submitted and the Court will stand in recess for the  a
judges: Rymer, Wardlaw, Smith N. R.